UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| HAZEL M. ARNOLD, | : | Case No. 3:20-cv-190 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Hazel M. Arnold brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #12), the Commissioner's Memorandum in Opposition (Doc. #16), and the administrative record (Doc. #10).

**I.      Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on June 14, 2016, alleging disability due to several impairments, including seizures, post-traumatic stress disorder, depression, anxiety, high blood pressure, chronic obstructive pulmonary disease, asthma, stomach issues, fibromyalgia, and arthritis. (Doc. #10, *PageID* #437). After Plaintiff's applications were denied initially and upon reconsideration, she requested and received two hearings before Administrative Law Judge (ALJ) Gregory G. Kenyon. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] He reached the following main conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since February 4, 2014, the earliest date for a potential finding of disability. |
| Step 2: | Plaintiff has the following severe impairments: chronic obstructive pulmonary disease, history of anemia, gastrointestinal distress associated with residuals of gastric bypass surgery and residuals of hernia repair surgery, pseudo-seizures, history of headaches, anxiety disorder, and post-traumatic stress disorder. |
| Step 3: | Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "light work … subject to the following additional limitations: (1) no more than occasional crouching, crawling, kneeling, stooping, or balancing; (2) no climbing of ladders, ropes, or scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) no operation of automotive equipment; (5) no concentrated exposure to temperature extremes or respiratory irritants; (6) no more than frequent use of the upper extremities for pushing, pulling, and handling; (7) limited to performing unskilled, simple, repetitive tasks; (8) no more than occasional contact with co-workers and supervisors; (9) no public contact; |

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

|  |  |
|---|---|
|  | (10) no fast-paced production work or strict production quotas; (11) limited to performing jobs which involve little, if any, change in job duties or work routine from one day to the next." |
| Step 4: | Plaintiff is unable to perform her past relevant work. |
| Step 5: | There are jobs that exist in significant numbers in the national economy that Plaintiff can perform. |

(Doc. #10, *PageID* #s 52-64). Based on these findings, the ALJ concluded that Plaintiff is not under a benefits-qualifying disability. *Id.* at 65.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #10, PageID #s 52-56), Plaintiff's Statement of Errors (Doc. #12), and the Commissioner's Memorandum in Opposition (Doc. #16). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.     Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.     Discussion**

Plaintiff contends that the ALJ failed to fully consider the testimony of the vocational expert when determining Plaintiff had the residual functional capacity to perform light exertion work. (Doc. #12, *PageID* #s 3998-4001). The Commissioner maintains that substantial evidence supports the ALJ's decision.

During the hearing, the ALJ posed several hypotheticals to the vocational expert to determine whether a hypothetical person with certain limitations could perform Plaintiff's past work and other work in the national economy. (Doc. #10, *PageID* #s 380-81). The vocational expert testified that the hypothetical individual could not perform Plaintiff's past work, but there are other jobs in the national economy that the hypothetical individual could perform. *Id.* at 381. The ALJ then asked if there would be any competitive work activity for the hypothetical person if she was absent two times per month. The vocational expert responded that two absences per month would be work preclusive. *Id*. at 382. Plaintiff's counsel asked how much time off task would be work preclusive, and the vocational expert replied that usually an individual can be off task ten percent of the workday (forty-five to fifty minutes in an eight-hour workday). *Id.*

Plaintiff contends that the ALJ's failure to include the off-task and absence limitations in the RFC constitutes reversible error because she would have been found disabled had these limitations been included. (Doc. #12, *PageID* #s 3999-4000). According to Plaintiff, "Because of her constant and unpredictable seizures, gastrointestinal and rectal bleeding, nausea, vomiting, and irritable bowel syndrome, it is evident that these conditions would lead to an ample amount of interruptions throughout a typical work day." *Id.* Plaintiff's argument lacks merit.

"RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis …." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (July 2, 1996). The ALJ is responsible for assessing an individual's RFC. 20 C.F.R. § 404.1520(a)(4). The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' -- i.e., opinions about what the individual can still do despite his or her impairment(s) -- submitted by an individual's treating source or other acceptable medical sources." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (footnote omitted).

Importantly, hypothetical limitations posed to the vocational expert do not bind the ALJ to include those limitations in the RFC. *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019) ("Indeed, the ALJ may pose a question involving a hypothetical individual with several limitations—and then later decide that those limitations differed from the claimant's limitations. That does not mean that the vocational expert's answer about the *hypothetical individual* binds the ALJ.") (internal citation omitted); *see also Beckham v. Comm'r of Soc. Sec.*, No. 1:19-CV-576, 2020 WL 5035451, at *9 (S.D. Ohio Aug. 26, 2020) (Litkovitz, M.J.) ("Simply posing a

5

hypothetical question to the [vocational expert] does not result in a finding about a claimant's RFC or bind the ALJ where the medical record does not support the inclusion of such limitations."). "An administrative law judge is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Plaintiff does not point to an opinion from a medical source that specifically opined that she would be off task more than ten percent of the time or be absent two or more times per month. Instead, Plaintiff asserts that the ALJ should have relied on the opinion of her treating physician, Vadak Ranganathan, M.D. He noted in her treatment record that she is "totally completely disabled from her spells." (Doc. #10, PageID #2622) (capitalization omitted).

The ALJ weighed Dr. Ranganathan's opinion and assigned it "no weight." (Doc. #10, PageID #60). The ALJ reasonably questioned what Dr. Rangathan meant by "completely disabled from her spells," noting that it was neither clear nor "consistent with the specific and precise definition of 'disability' for Social Security purposes." *Id.* He correctly observed that, "Whether any documented reduction in capability renders a individual "disabled" … is an issue to be resolved under Social Security rules and regulations." *Id*. "Indeed, the regulations specifically exclude from consideration opinions on certain issues, such as conclusory statements that a claimant is disabled or unable to work." *Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 476 (6th Cir. 2012) (citing 20 C.F.R. § 404.1527(d)) ("Thus, the administrative law judge correctly ruled that the conclusion expressed by Dr. Redmon in his single-sentence note … was one properly

reserved to the Commissioner."). Moreover, the ALJ explained, "it appears likely that Dr. Ranganathan's use of the (decidedly non-medical) term 'spells' coincides with the fact that there is no actual medically determinable basis for such symptoms." (Doc. #10, PageID #60).

Plaintiff argues that if the ALJ had considered "the exhibit in its entirety, it would only be fair to concluded that Dr. Ranganathan was referring to [Plaintiff's] pseudo seizures. There is nothing else in [her] medical records that would possibly be referred to as 'spells.'" (Doc. #12, PageID #4001). However, Dr. Ranganathan's treatment records are not as straightforward as Plaintiff contends. Indeed, Dr. Ranganathan's use of the term "spells" is ambiguous. He frequently uses the term "spells" when discussing her episodes of loss of consciousness, seizures/pseudo-seizures, and low glucose/hypoglycemia. *See* Doc. #20, PageID #s 2621, 2623-25, 2627, 2629. For instance, in April 2014, he indicated that Plaintiff reported "2 spells per week of LOC [(loss of consciousness)] with jerking of the body …" and "1 spell of hypoglycemia per week." *Id.* at 2621, 2624, 2626-27 (capitalization omitted). In the same record, he noted that she reported two seizures/pseudo-seizures per week and does not want to stop taking her seizure medication because it has "brought down the number of spells considerably." *Id.* at 2621 (capitalization omitted) (emphasis added). Finally, he notes that she sees Dr. Jawadi for low glucose spells. *Id.* Based on this record, it is not clear if there are differences between spells when she loses consciousness, seizures/pseudo-seizures, and hypoglycemia/low glucose spells.

The ALJ also reasonably discounted Dr. Ranganathan's opinion because he did not provide any "plausible rational" for his opinion. (Doc. #10, PageID #60); *see* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly

medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion "). Furthermore, the ALJ discounted his because opinion because "Dr. Ranganathan's treatment records show that, when examined, all body systems appeared normal with no neurological deficits. (Doc. #10, PageID #60) (citation omitted); see 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

The ALJ reasonably considered the opinions of the record-reviewing physicians, Elizabeth Das, M.D., and William Bolz, M.D. (Doc. #10, PageID #s 58-60). Dr. Das found that there was no new and material evidence of significant change in Plaintiff's physical condition and adopted the residual functional capacity set forth in a prior ALJ decision. Id. at 450. Dr. Bolz, however, did find new and material evidence of significant change. Id. at 493. He opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently. Id. at 491. She could stand and/or walk for six hours in an eight-hour workday and sit for six hours. Id. Plaintiff could frequently push/pull with her upper extremities. Id. at 492. She could never climb ladders, ropes or scaffolds. She could occasionally balance and climb ramps and stairs. She could frequently stoop and bend. Id. She should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., and she should avoid all exposure to hazards such as machinery and heights. Id. at 493.

The ALJ assigned "little weight" to Dr. Das' opinion, concluding that there was progression of Plaintiff's symptoms since the prior ALJ's decision. Id. at 60. In contrast, he gave

"the greatest weight" to Dr. Bolz's opinion because his opined restrictions most accurately reflected Plaintiff's condition during the relevant time. *Id.*; *see* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). However, the ALJ did not adopt Dr. Bolz's opinion in full; he found that Plaintiff was slightly more limited than set forth by Dr. Bolz.

Plaintiff asserts that the ALJ erred in failing "to evaluate or give any attention to [Plaintiff's] abdominal pain and irritable bowel syndrome." (Doc. #12, PageID #4001). This is significant, according to Plaintiff, because both impairments "contribute to off-task behavior and excessive absenteeism." *Id.* at 4002. However, Plaintiff does not point to an opinion from a medical source that opined that either condition causes any functional limitations. Instead, Plaintiff points to five exhibits that show Plaintiff has been evaluated and diagnosed with abdominal pain, abdominal tenderness, gastrointestinal bleeding, rectal bleeding, nausea, and vomiting. *Id.* at 4000. She points to three exhibits that "indicate diagnoses of irritable bowel syndrome as a reoccurring condition." *Id.* However, "[t]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citing *Foster v. Bowen,* 853 F.2d 483, 489 (6th Cir.1988)).

Moreover, the ALJ did not completely disregard Plaintiff's abdominal pain. The ALJ found that gastrointestinal distress associated with residuals of gastric bypass surgery and residuals of hernia repair surgery constituted a severe impairment. (Doc. #10, *PageID* #54). The ALJ also recognized that a treating medical provider indicated that Plaintiff's gastrointestinal disorder caused no significant limitations. *Id*. Specifically, Challa Ajit, M.D., who treated Plaintiff from

March 2011 through August 2016, diagnosed iron deficiency anemia, general abdominal pain, rectal bleeding, and constipation. *Id* at 2860. When asked to "describe any limitations [her] impairments(s) imposes on the ability to perform sustained work activity, Dr. Challa responded, "none." *Id.* at 2861.

In sum, the ALJ reasonably evaluated the medical evidence related to Plaintiff's impairments and substantial evidence supports her RFC. Plaintiff has not shown that the ALJ erred by failing to include additional off-task or absence limitations in the RFC. For these reasons, Plaintiff's statement of errors is not well taken.

**IT IS THEREFORE ORDERED THAT:**

1. The Commissioner's non-disability determination is **AFFIRMED**; and
2. The case is terminated on the docket of this Court.

January 10, 2022

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge